(57 App. Div. 284.)

### GREEN v. LAWRENCE CEMENT CO.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

MASTER AND SERVANT—INJURY TO SERVANT—DANGEROUS MACHINERY.

A complaint in an action to recover for intestate's death from the explosion of a steam chest alleged that it was caused by the omission to provide such a safety valve and steam gauge as were usually attached to pipes passing the steam from a high to a low pressure engine, as in the

case at issue. The evidence showed the absence of such appliances. There was also evidence that the steam was controlled by a hook rod, which at the time of the accident was left unfastened. There was no evidence that the safety valve would have been large enough to have relieved the pressure of steam caused by the failure to fasten the hook rod. *Held* that, in the absence of such evidence, the negligence of defendant in failing to provide a safety valve and steam gauge, as charged, was not shown to be the cause of the accident.

Merwin and Edwards, JJ., dissenting.

Appeal from special term, Ulster county.

Action by Eliza J. Green, as administratrix de bonis non of the goods, etc., of Augustus Carter, deceased, against the Lawrence Cement Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The action was brought to recover damages by reason of the alleged negligence of the defendant resulting in the death of the plaintiff's intestate. The defendant, a domestic corporation, engaged in the manufacture of cement, in March, 1897, procured to be placed in its mill, in Eddyville, N. Y., a new low-pressure engine, to be used in connection with its high-pressure engine, the two constituting what is known as a "compound engine." It had contracted for this engine with the Wright Steam-Engine Works of Newburgh, N. Y., who sent Law, a competent mechanic, to superintend its erection and making the proper connections. The steam from the cylinder of the high-pressure engine passed through a steam pipe into the steam chest of the low-pressure engine, from which it was admitted into the cylinder by means of two admission valves, controlled by a hook rod. and so arranged that they dropped back automatically, and remained closed, except when the hook rod raised them to admit the steam from the steam chest to the cylinder of the low-pressure engine. The hook of this rod dropped down over a pin on a wrist plate, and, to prevent its jumping off the wrist plate, there was a safety latch on the bottom of and across the hook, which slipped underneath the pin of the wrist plate, and into a slot in the hook. If this safety latch is not fastened, the hook rod is liable to jump from the wrist plate, and when it becomes disengaged the admission valves are closed, the steam cannot escape from the steam chest into the cylinder, it continues to be pumped from the high-pressure engine into the steam chest of the low-pressure engine, and the pressure is raised until the limit of endurance is reached, when an explosion is inevitable. The new engine was started on Saturday, April 3, 1897, and on the following Monday, April 5th, it was again started for the purpose of grinding cement in the defendant's mill. Law was in charge of it. Carter, the plaintiff's intestate, was an oiler, and had been in that position for two days, having previously been in the employment of the defendant as a laborer. The safety latch of the hook rod was left open by Law, and the engine ran with this unfastened for a little over two hours, when, in consequence of the safety latch being open, the hook rod jumped the wrist plate, and an explosion followed. The end of the steam chest was blown off, struck the live steam pipe above the cylinder, caused a rupture. and the plaintiff's intestate was killed by inhalation of the escaping hot steam.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

A. T. Clearwater, for appellant.
A. S. Newcomb, for respondent.

SMITH, J. The learned trial judge correctly stated to the jury the legal principles upon which this case must stand. If, then, there be evidence sufficient to sustain the conclusions which the jury have reached, this judgment must be affirmed. The negligence found is in the omission of the safety valve and gauge in the steam pipe leading

from the high to the low pressure engine.  For the injury caused by such negligence this plaintiff has recovered.  The finding of the jury that the omission of such a safety valve and steam gauge as were usually attached to such pipes was negligence cannot, we think, be disturbed.  That such valves were usual under such circumstances appears from the plaintiff's evidence and is undisputed.  That the death to recover for which this action was brought was caused by such negligence is, however, a claim earnestly controverted by this defendant.  The plaintiff claims support for this finding in the testimony of Rose and Cooper that, if a safety valve and gauge had been provided, this explosion would not have occurred.  But a careful examination of the evidence discloses that both of these witnesses significantly qualified their testimony by the condition, "if there had been one in there large enough."  The mere statement of such a condition suggests at once the question whether the safety valves usually attached to such pipes were such as would have been "large enough" to have averted this accident.  The purpose of this safety valve in this pipe was in part to relieve the backward pressure of the steam, and in part to give warning by its hissing sound that the pressure of the steam exceeded the necessary degree.  The use of the gauge was simply to indicate to the engineer the amount of the steam pressure in the pipes.  The witnesses agreed that the presence of the steam gauge could not have averted this accident, nor could a safety valve, by reason of any warning that it might have given to the engineer. With the jumping of the hook from the wrist plate the pressure became tremendous and instantaneous, and the record appearing upon the steam gauge could hardly have been read before the explosion. This explains the qualified answers given by these witnesses.  To have prevented this accident, this safety valve attached must have been large enough to have relieved this tremendous pressure of steam. But the record is barren of evidence that the safety valve usually placed upon such pipes is put there or is ever adequate for such purpose.  The mere fact that the steam gauge is also attached would indicate that in the working of the engines there might be a gradual increase in pressure beyond the degree required, such as would call for a slackening of the power by the engineer, and that the safety valve usually placed upon such a pipe, as well as the steam gauge, was for the purpose of warning the engineer of such gradual increase of pressure, and the safety valve had the further purpose of relieving in part therefrom.  It is not suggested in the evidence that this safety valve is usually placed there as a precaution against such an accident as here happened.  It would seem to be an unnecessary precaution for such a purpose.  That danger was fully guarded against by this safety latch, which, if it had been properly used, would have prevented the accident.  Reasonable care does not call for a second guard, where one furnished affords ample protection with proper use. But we are not left to surmises or to reasoning to determine this question.  The testimony of the witness Wright, who appears to be a reputable witness, is to the effect that such a valve as is usually placed upon such pipes would have been wholly inadequate to meet this emergency.  He swears: "Had it been there in position and

working perfectly at the time of the accident, it would not have prevented the happening of the accident." This evidence stands uncontradicted in the case. The negligence with which the defendant has been charged is in the omission to provide such a safety valve and steam gauge as are usually attached to such pipes. Without proof, therefore, that the failure to provide such guards has caused this accident, the plaintiff has clearly failed to establish her cause of action. The judgment should therefore be reversed.

Judgment and order reversed on the law and facts, and new trial granted, with costs to appellant to abide event. All concur, except MERWIN and EDWARDS, JJ., dissenting.